# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

HENRIETTA PLATT,

        Plaintiff,

                                 **CASE NO. 2:09-CV-10886**
                                 **JUDGE AVERN COHN**
                                 **MAGISTRATE JUDGE PAUL J. KOMIVES**

v.

UNIVERSITY OF MICHIGAN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S COMPLAINT
## (Doc. Ent. 11)

### Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.     The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    C.     Defendant University of Michigan's Dispositive Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    D.     Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.     Employment Discrimination Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    F.     The Court should grant in part and deny in part defendant University of Michigan's dispositive motion. . . . . . . . . . . . . . 17
          1.     The individually named defendants are entitled to dismissal of the Title VII, Rehabilitation Act, ADA, ADEA
                and/or Michigan ELCRA claims against them, because they are not "employers." . . . . . . . . . . . . . . . . . . . . . . 17
          2.     The Eleventh Amendment bars ADEA, ADA and state-law claims against defendant University of Michigan in
                its official capacity, but it does not bar a Title VII action against it in its official capacity. . . . . . . . . . . . . . . . . 19
          3.     Plaintiff has exhausted her Title VII race, sex and retaliation claims against defendant University of Michigan,
                and the Court need not address whether plaintiff has complied with the exhaustion requirement(s) as to non-
                Title VII claims against any of the defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          4.     Plaintiff should be allowed to file an amended complaint with respect to her Title VII hostile work environment
                claim against defendant University of Michigan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          5.     Plaintiff should be allowed to file an amended complaint with respect to her Title VII retaliation claim against
                defendant University of Michigan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    G.     The Court should allow plaintiff to file a more definite statement pursuant to Fed. R. Civ. P. 12(e) in the form of a first
          amended complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
          1.     Parties to the action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
          2.     Subject matter jurisdiction and Fed. R. Civ. P. 8(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
          3.     Claims for relief and Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
          4.     A demand for relief and Fed. R. Civ. P. 8(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
          5.     The form of an amended complaint and Fed. R. Civ. P. 10(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    H.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**I.      RECOMMENDATION:** The Court should grant in part and deny in part defendant University of Michigan's Fed. R. Civ. P. 12(c), 12(d) motion to dismiss and/or Fed. R. Civ. P. 56 motion for summary judgment.  The Court should also permit plaintiff to file a first amended complaint, within a specified time period, which will supercede the original complaint and which should comply with the requirements set forth below.

**II.      REPORT**:

**A.      Background**

Henrietta Platt began her employment with the University of Michigan Health System as a Custodian II on or about November 13, 2002.  Doc. Ent. 11 at 6; Doc. Ent. 22 at 6.  Her performance evaluation for the year 2006 showed a manager's evaluation of "Solid Performance" in all areas of Performance Expectations, except for "Customer Focus" and "Efficiency," in both of which she received an evaluation of "Approaching."  Doc. Ent. 1-3 at 24-26.

On January 12, 2007, she completed a University of Michigan Employee Grievance for AFSCME (American Federation of State, County & Municipal Employees) represented employees.  Platt requested "to cease the disparat[e] treatment[,]" and "[t]o use the same tone of voice with all employees to maintain only one standard of work p[er]formance." Doc. Ent. 1 at 25; Doc. Ent. 11-9 at 2.  It appears this grievance was designated No. 07-4934.  *See* Doc. Ent. 1 at 20-24.

A second step hearing of Pratt's grievance took place on January 23, 2007.  Doc. Ent. 1 at 19 (07-4934), 35 (07-4934).  On March 14, 2007, Kathy Jordan-Sedgeman, for the University Review Committee, noted that Platt's grievance and her request that she be "treated in an equitable and respectful manner[,]" were granted.  Doc. Ent. 1 at 19 (07-4934), 35 (07-4934);

Doc. Ent. 11-9 at 3 (07-4934). On March 20, 2007, Gregory S. Zelanka of the AFSCME Local 1583 Arbitration Review Committee wrote to Platt, informing her that her grievance had been granted. Doc. Ent. 1 at 18 (07-4934).

On or about August 10, 2007, Platt completed a University of Michigan Employee Grievance for AFSCME represented employees. The grievance represented that "Miss Platt feels that the supervisor is do[ing] nothing about the coworker who keeps on assaulting her when she has brought it to his attention[.]"Doc. Ent. 11-9 at 4 (07-5712).

On or about October 18, 2007, plaintiff received her performance evaluation for the year 2007. She received a manager's evaluation of "Solid Performance" in each of the performance expectation categories. The Overall Evaluation Summary Statement reads, "Ms. Platt does a consistent job of routine cleaning in the various areas. [She] needs to improve in [the] area of floor care/carpet care." Doc. Ent. 1-3 at 21-23.

On October 22, 2007, Bruce Arrieta issued Platt a written warning based upon an alleged, same-day incident. Doc. Ent. 1-4 at 17; Doc. Ent. 11-3 at 2. Plaintiff disputes that she "called anyone 'stupid and ignorant'" and contends she "never made racial slurs." Doc. Ent. 22 at 6.

On November 7, 2007, Platt completed a University of Michigan Employee Grievance for AFSCME represented employees (07-5688) in which she mentioned the October 22, 2007 written warning. Doc. Ent. 11-9 at 6. Platt completed four grievances on November 21, 2007 (07-5685, 07-5689, 07-5690, 07-5691). Doc. Ent. 11-9 at 8, 10-12. She completed two grievances on December 14, 2007. Doc. Ent. 11-9 at 14 (07-5686), 16 (07-5687).

On or about January 2, 2008, Arrieta informed Platt that she had been placed on a two-day disciplinary layoff based upon an alleged December 31, 2007 instance of misconduct. Doc.

Ent. 1-4 at 3; Doc. Ent. 11-4 at 2. Plaintiff contends that she did not refuse "to follow supervisor [Arrieta's] instructions for work assignment[.]" Doc. Ent. 22 at 6. On January 7, 2008, Arrieta contacted Donald Peterson and asked him to inform Morgan that Platt had requested a steward. Doc. Ent. 1-4 at 2.

On January 18, 2008, Platt completed a University of Michigan Employee Grievance for AFSCME represented employees in which a two-day DLO (disciplinary layoff) is mentioned. Doc. Ent. 11-9 at 18 (08-5731). Platt completed other grievances on February 18, 2008 (Doc. Ent. 11-9 at 20 (08-5804)) and March 17, 2008 (Doc. Ent. 11-9 at 22 (08-5838)).[1]

On February 6, 2008, Platt was notified that a second step grievance hearing regarding nine grievances was scheduled for February 12, 2008. Doc. Ent. 1-3 at 49. A Second Step hearing was allegedly held on February 12, 2008.[2] Platt's grievance and request that "supervision needs to take action when problems arise between employees and stop the disparity of treatment[,]" were denied. Doc. Ent. 11-9 at 5 (07-5712). Also, Platt's grievance and request that "the letter [be] removed from the file, stop disparity of treatment and be made whole for all lost wages and benefits[,]" were denied. Doc. Ent. 11-9 at 7 (07-5688). Additionally, Platt's

---

[1]D. Morgan, Chief Steward, was scheduled to attend a February 4, 2008 Step One Meeting of a potential grievance. Doc. Ent. 1-3 at 50. Dane Morgan is identified as a Vice President of AFSCME Local 1583. Doc. Ent. 1 at 18.

[2]In a July 29, 2008 statement, plaintiff states that Daughenbaugh and Donahue "had spoken before [Platt] had arrived, [Platt] agree[d] on him resolving, only because he was suppose[d] to remove the written warning, an[d] also the 2day DLO so [Platt] could transfer out of his dept. an[d] the other meeting was cancel[led] by the dept.[.]" Doc. Ent. 1 at 41.
In an August 3, 2008 statement, plaintiff apparently alleges that on February 12, 2008, Michael Daughenbaugh asked her "to agree to let the said Grievances be removed, an[d] the other 8 resolve[d] from [her] file in the presen[ce] of two witnesses Sharon Donahue and Gregory Zelanka[.]" According to this statement, "[t]here was never a Step Two Grievance for 9+1 on Feb. 12, 2008[.]" Doc. Ent. 1 at 13.

4

grievance and requested remedy to "follow the Agreement and be made whole for all lost wages and benefits[,]" were granted in part in that "the department will make every attempt to contact a steward." Doc. Ent. 11-9 at 9 (07-5691).[3] Furthermore, Platt's grievance and requested remedy that "[her] restrictions [be] followed, stop the threats and harassment and be made whole for all lost wages and benefits[,]" were denied. Doc. Ent. 11-9 at 13 (07-5685, 07-5689, 07-5690).[4] Moreover, Platt's grievance and requested remedy that "temporary individuals should not be performing these duties that are performed by regular employees, and be made whole for all lost wages and benefits[,]" were denied. Doc. Ent. 11-9 at 15 (07-5686). In addition, Platt's grievance and requested remedy that "[her] PTO bank [be] corrected and make [her] whole for all lost wages and benefits[,]" were denied. Doc. Ent. 11-9 at 17 (07-5687). Too, Platt's grievance and requested remedy that "the letter [be] removed from the file and [she] be made whole for all lost wages and benefits[,]" were denied. Doc. Ent. 11-9 at 19 (07-5731).

The University of Michigan contends that Platt was "insubordinate by refusing to follow her supervisor's instructions regarding a job assignment." In addition, her former employer claims, Platt "became argumentative and told her supervisor he could not tell her what to do." Doc. Ent. 11 at 6. Platt claims she "[f]ollow[ed] the Job assignment, never argue[d] with supervisor and did not say to [him] he could not tell [her] what to do." Doc. Ent. 22 at 6.

On March 14, 2008, Arrieta wrote to Platt. He mentioned an October 22, 2007 written warning, a January 2, 2008 two-day disciplinary layoff, and a February 28, 2008 suspension pending a Disciplinary Review Conference (DRC). Arrieta informed Platt that "[o]n March 04,

_____

[3]Jordan-Sedgeman signed this decision for the University Review Committee.

[4]Jordan-Sedgeman signed this decision for the University Review Committee.

5

2008 a [DRC] was held which resulted in [Platt's] termination from employment with the University of Michigan Health System." Doc. Ent. 1-3 at 10-11, 47-48; Doc. Ent. 11-5 at 2-3.

Effective March 14, 2008, Platt's termination was converted to a DLO. Doc. Ent. 1-3 at 14. It appears that AFSCME Local 1583 filed an employee grievance statement on March 17, 2008 regarding Platt's termination. Doc. Ent. 11-6 at 3. On March 28, 2008, Susan Powers was informed that Platt would "be paid out her PTO time from February 28, 2008 thru March 13, 2008 for a total of 84.0 hours." Doc. Ent. 1-3 at 14.

It appears that a Second Step hearing of Platt's grievance took place on April 1, 2008. Platt's grievance and requested remedy that "[she] [be] given enough time to discuss [her] grievance with [her] steward[,]" were denied. Doc. Ent. 11-9 at 21 (08-5804). Also, Platt's grievance and requested remedy that she "be reinstated and be made whole for all lost wages and benefits[,]" were denied. Doc. Ent. 11-9 at 23-24 (08-5838).

On or about April 17, 2008, Platt wrote to AFSCME Local 1583. Doc. Ent. 1 at 37. On April 18, 2008, Platt completed an AFSCME Local 1583 grievant statement. Doc. Ent. 1 at 36. On April 30, 2008, it appears that Michael Daughenbaugh recommended that Platt not be rehired. Doc. Ent. 1-3 at 12; Doc. Ent. 11-5 at 4.

Allegedly, Platt filed for unemployment compensation benefits. Doc. Ent. 1-3 at 46. It appears that Platt was denied unemployment benefits by the State of Michigan, Department of Labor & Economic Growth, Unemployment Insurance Agency. This is so, because on May 28, 2008, Zelanka wrote to the agency requesting that it reconsider Platt's unemployment benefits. Doc. Ent. 1 at 38.

On July 10, 2008, Platt completed an EEOC Charge of Discrimination based upon race,

sex, retaliation and age for the period October 1, 2007 through February 8, 2008; it was received

at the EEOC on July 10, 2008 and was received at the EEOC Detroit District Office on July 16,

2008. Doc. Ent. 11-8 at 2. More than four months later, on November 18, 2008, arbitrator

Mario Chiesa denied Platt's March 17, 2008 (Local Grievance #: 08-5705) grievance in a State

of Michigan Voluntary Labor Arbitration between the Regents of the University of Michigan

and the AFSCME Local 1583. Doc. Ent. 11-6 at 2-3, 17.

**B.     The Complaint** [5]

On March 9, 2009, plaintiff Henrietta Platt filed the instant complaint. Doc. Ent. 1. The

Civil Cover Sheet indicates that jurisdiction is based upon federal question and classifies the

nature of suit as "civil rights." Doc. Ent. 1-4 at 27.

Certain of the first twelve (12) pages of plaintiff's complaint are handwritten (Doc. Ent. 1

at 1-4, 10-11); others are typewritten (Doc. Ent. 1 at 5-9, 12). Within these pages, plaintiff

mentions an environment that is hostile on the basis of age (Doc. Ent. 1 at 1). She contends that

the reasons for her termination were fabricated to create the loss of her job "[b]ecause of the

color of [her] skin [and] [her] age[,]" and "when [she] file[d] [grievances] about the abuse they

create[d] the los[s] of [her] job[,]" (Doc. Ent. 1 at 2). She also mentions disparate treatment,

---

[5]Plaintiff's address is listed as Attn: Jessica Platt, 525 South State Street, #118, Chicago,
IL 60605. Doc. Ent. 1 at 1. Within her complaint, she alleges to be homeless. *See*, *i.e.*, Doc.
Ent. 1 at 8, 10, 12. The telephone number listed (734-330-5950) is attributed to an Ann Arbor,
MI based cellular phone. Doc. Ent. 1 at 1, 10; Doc. Ent. 8; www.whitepages.com, "Reverse
Lookup."
        On March 11, 2009, plaintiff filed a notice of change of address to Attn: Jessica Platt,
525 South State Street, #1018, Chicago, IL 60605. Doc. Ent. 3. On August 27, 2009, plaintiff
filed another change of address, listing her address as P.O. Box 2393, Ann Arbor, MI 48106.
Therein, she states, "File all information with the Court on line. I check all the time. Do not
mail Court papers[.]" Doc. Ent. 21.

harassment, hostile environment, discrimination, retaliation and Title VII of the Civil Rights Act of 1964 (Doc. Ent. 1 at 5-6, 9-11); and "no reasonable accommodations for disability," (Doc. Ent. 1 at 7).[6] Furthermore, she mentions the laws of the State of Michigan. Doc. Ent. 1 at 9, 11.[7]

The caption to plaintiff's complaint lists eleven (11) defendants. Doc. Ent. 1 at 1. However, the docket for this case adds a twelfth defendant - Paula Gould, who is elsewhere described as "a clerical employee in Human Resources." Doc. Ent. 11 at 9-10.[8] On March 30, 2009, the U.S. Marshal received twelve (12) copies of the complaint for service of process upon defendants. Doc. Ent. 5. It appears that service was effected on April 1 or 2, 2009 at 40 Health System, Legal Office, 300 N. Ingalls Rm 3B04, Ann Arbor, MI 48190. Doc. Entries 13 (Arrieta and/or University of Michigan), 14 (Gould and/or Denton), 15 (Childs and/or Jordan-Sedgeman), 16 (Daughenbaugh and/or Coleman), 17 (Rutherford and/or Jester) and 18 (Peterson and/or

---

[6]Among the attachments to plaintiff's complaint are medical records, including doctor's notes. *See*, *i.e.*, Doc. Ent. 1-4 at 5, 7.

[7]The remaining 164 pages appear intended as exhibits. **For example, attached to the complaint are grievance-related documents (Doc. Ent. 1 at 13, 18-25, 35-36); what appears to be an employment discrimination form (Doc. Ent. 1 at 14-17); civil rights research materials (Doc. Ent. 1 at 26-34); an April 17, 2008 letter from Platt to AFSCME Local 1583 (Doc. Ent. 1 at 37); a May 28, 2008 letter from Zelanka to the State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency (Doc. Ent. 1 at 38); a July 29, 2008 letter regarding the 2-day DLO (Doc. Ent. 1 at 40); a July 29, 2008 letter regarding the grievance procedure and dates Platt requested a steward (Doc. Ent. 1 at 41); copies of electronic mails (Doc. Ent. 1 at 42-50, Doc. Ent. 1-2 at 1-33); a copy of a twenty-five (25) page file (Doc. Ent. 1-2 at 34-50, Doc. Ent. 1-3 at 1-9); and a copy of a sixty-seven (67) page file (Doc. Ent. 1-3 at 10-50, Doc. Ent. 1-4 at 1-26)**. The source of one of plaintiff's handwritten pages (Doc. Ent. 1 at 39) is unclear.

[8]Along with her complaint, plaintiff filed an application to proceed *in forma pauperis* and a request for service by U.S. Marshal. Doc. Ent. 2. On March 18, 2009, Judge Cohn granted the application to proceed in forma pauperis and granted the request for service. Doc. Ent. 4.

Powers).[9]

On April 27, 2009, eleven (11) defendants (the University of Michigan, Bruce Arrieta,[10] Billy Jester, Ronald Rutherford,[11] Susan Powers,[12] Thomas Peterson, Mary Sue Coleman,[13] Michael Daughenbaugh,[14] Kathy Jordan-Sedgeman,[15] Debra Childs, and Tony Denton[16]) filed an answer and affirmative defenses. Doc. Ent. 7. An appearance has been entered on behalf of these same eleven (11) defendants. Doc. Ent. 6.

Seven days later, on May 4, 2009, plaintiff filed a "motion to continue," in which she set

---

[9]Defendants' first affirmative defense is that "Plaintiff has failed to properly serve the individually named Defendants." Doc. Ent. 7 at 2 ¶ 1. In her reply to the answer, plaintiff claims she properly served the individual defendants. Doc. Ent. 10 at 2 ¶ 1.
In the instant dispositive motion, defendant University of Michigan asserts that "[p]laintiff has failed to properly serve any of th[e] individual [d]efendants. Plaintiff's complaint as to these individuals is subject to dismissal for failure to serve the individuals." Doc. Ent. 11 at 10 n.2. Any such claim should be filed along with an explanation regarding what was faulty about service upon the defendants.

[10]Bruce Arrieta is the Housekeeping Supervisor IV, Environmental Services Department, University of Michigan Health System. Doc. Ent. 1-4 at 2, Doc. Ent. 1-3 at 10.

[11]Ron Rutherford is the Department Head of the Environmental Services Department. Doc. Ent. 11-9 at 22.

[12]Susan Powers is with Human Resources, University of Michigan Medical Center. Doc. Ent. 1-3 at 14.

[13]Mary Sue Coleman is the President of the University of Michigan. Doc. Ent. 11 at 9.

[14]Michael L. Daughenbaugh is the Assistant Director of Environmental Services for the University of Michigan Health System. Doc. Ent. 1-2 at 3. Elsewhere he is apparently listed as a Department Head of the Environmental Services Department. Doc. Ent. 11-9 at 12.

[15]Kathy Jordan-Sedgeman RN MS is the Director of HR Services and Labor Relations for UMHS Human Resources. Doc. Ent. 1 at 43. *See also* Doc. Ent. 1-2 at 27.

[16]T. Anthony Denton is the Senior Associate Director and Chief Operating Officer of the University of Michigan Hospitals and Health Centers. Doc. Ent. 1 at 45.

forth a demand for relief.  Doc. Ent. 8.[17]  Plaintiff filed a reply to the answer and affirmative

defenses on June 18, 2009.  Doc. Ent. 10.  Therein, she states: "The University and Defendants

were able to achieve the goals of their individual misconduct and their conspiracy over a long

period by intentionally [and] methodically concealing and distorting the truth about the adverse

[u]nlawful work harassment and retaliation."  She requests that the Court reject the answer and

affirmative defenses.  Doc. Ent. 10 at 3.[18]

## C.    Defendant University of Michigan's Dispositive Motion

Judge Cohn has referred this case to me to conduct all pretrial proceedings.  Doc. Ent. 9.

Currently pending before the Court is defendant University of Michigan's July 7, 2009 motion to

dismiss and/or for summary judgment.  Doc. Ent. 11.  Defendant argues that "plaintiff's claims

of age discrimination, disability discrimination, and state law violation are barred by Eleventh

Amendment sovereign immunity."  Doc. Ent. 11 at 8-9.  Defendant also argues that "[t]he

individually named supervisors are not liable for plaintiff's statutory discrimination claims."

Doc. Ent. 11 at 9-10.  Additionally, defendant argues, "[p]laintiff has failed to exhaust her

administrative remedies as to [her] claims under the ADA and as to all federal civil rights claims

against the individually named defendants."  Doc. Ent. 11 at 10-11.  Furthermore, defendant

argues, "[p]laintiff fails to plead a claim for hostile work environment."  Doc. Ent. 11 at 12-13.

Finally, defendant argues, "[p]laintiff fails to present a prima facie claim of retaliation in that she

---

[17]By an order entered this date, I have requested that the Clerk of the Court recharacterize
plaintiff's filing as a reply to an answer.  *See* Fed. R. Civ. P. 7(a)(7).  In fact, the front page of
this filing states, "reply: motion to continue."

[18]Attached to this filing is what appears to be a copy of a portion of a decision reported in
TPLR, Inc. (Doc. Ent. 10 at 4-6).

cannot demonstrate she engaged in protected activities under the act." Doc. Ent. 11 at 13-15.

Attached to defendant's motion are several exhibits, including an October 22, 2007 written warning for verbal abuse (Exhibit A - Doc. Ent. 11-3), a January 2, 2008 two day disciplinary layoff for misconduct (Exhibit B - Doc. Ent. 11-4), a March 14, 2008 notice of discharge (Exhibit C - Doc. Ent. 11-5), plaintiff's July 10, 2008 EEOC charge (Exhibit F - Doc. Ent. 11-8), a November 18, 2008 opinion and award of arbitrator Mario Chiesa (Exhibit D - Doc. Ent. 11-6) and an employee grievance file (Exhibit G - Doc. Ent. 11-9). *See also* Doc. Ent. 11-2 (Exhibit List).

On August 6, 2009, I entered an order setting the deadline for a response to defendant's motion for September 15, 2009. Doc. Ent. 12.[19] On September 9, 2009, plaintiff filed a "motion to continue/for jury trial" (Doc. Ent. 22 at 1-6, 21). She claims that defendant's statement of facts (Doc. Ent. 11 at 6) "should show the courts how [defendant University of Michigan] [has] no respect for the Civil Rights Act[;]" and defendant(s) "have created these incidents to put in [her] file to fire [her]." Plaintiff relies upon defendant's Exhibits A-D (Doc. Entries 11-3, 11-4, 11-5 and 11-6) and claims defendant has shown that the employer "never made appropriate corrective actions to stop the Supervisor[,]" "[n]ever [made] any remedial corrective action designed to stop the harassment[,]" "[s]howed [her] mental anguish [and] how it affected [her][,]" and showed "[h]ow [she] was penalize[d] [for filing] Grievances[.]" Doc. Ent. 22 at 2.

Also, she appears to respond to the second, third and fourth arguments in defendant's

---

[19]On August 11, 2009, counsel for defendants informed the Court that he had been unable to serve plaintiff with a copy of defendant's motion using the 525 S. State Street, #1018, Chicago, IL 60605 address. Defense counsel stated he would resend a copy of the motion to plaintiff's address of record and would forward a copy of the motion to P. O. Box 2393, Ann Arbor, MI 48106. Doc. Entries 19 and 20.

dispositive motion, Doc. Ent. 22 at 3-5; and sets forth her own statement of facts and uses the

phrase, "summary judgement standard," Doc. Ent. 22 at 6. In the end, she pleads for "the mercy

of the court to allow the Motion to be continuing a[nd] [to] let justice prevail[.]" Doc. Ent. 22 at

21.

It is clear that plaintiff's September 9, 2009 filing (Doc. Ent. 22) is plaintiff's response to

defendant's July 7, 2009 motion (Doc. Ent. 11).[20] Therefore, I have entered an order directing

the Clerk of the Court to recharacterize plaintiff's September 9, 2009 filing (Doc. Ent. 22) as a

response to defendant University of Michigan's July 7, 2009 motion (Doc. Ent. 11).

**D.     Applicable Law**

Defendants' motion is based upon Fed. Rules of Civ. P. 12(c) and 12(d). Doc. Ent. 11 at

1. Fed. R. Civ. P. 12(c), which governs a motion for judgment on the pleadings, provides: "After

the pleadings are closed–but early enough not to delay trial–a party may move for judgment on

the pleadings." Fed. R. Civ. P. 12(d), which concerns the result of presenting matters outside of

the pleadings, states: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56. All parties must be given a reasonable opportunity to present

all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In pertinent part, Rule 56

provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[20]In the "conclusion" of this filing, plaintiff requests appointment of counsel. Doc. Ent.
22 at 21. Any such request should be filed in a separate motion pursuant to 28 U.S.C. § 1915
("Proceedings in forma pauperis"), which states in part, "[t]he court may request an attorney to
represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). *See also Abdullah v.
Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (discussing relevant factors).

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[21]

### E.     Employment Discrimination Generally [22]

There are several federal statutes and statutes from the State of Michigan which govern employment discrimination. Many of these statutes are referenced in the record of this case. Some of them are set forth here for clarification.

**1.**     To begin, at the federal level, there is the **Civil Rights Act** of 1964, which is codified at 42 U.S.C. §§ 2000a-2000h-6 ("Civil Rights Act of 1964").[23] Within this Act, 42 U.S.C. § 2000e-2 governs "[u]nlawful employment practices[.]"[24]

With respect to "employer practices," the statute provides: "[i]t shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such

---

[21]As defendant points out, "'[t]he fact that discovery is not complete-indeed, has not begun-need not defeat [a motion for summary judgment].'" *Pan American Pharmaceuticals, Inc. v. Shelin*, Nos. 91-1837, 91-1839, 1992 WL 358481, 6 (6th Cir. 1992) (quoting *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir.1986)).

[22]*See, i.e.,* 10B Fed. Prac. & Proc. § 2732.3 ("Actions Arising Out of the Employment Setting") (mentioning race, sex, age & disability discrimination, as well as retaliation).

[23]There is also the Civil Rights Act of 1991. 2 U.S.C. §§ 601, 1201-1202, 1219-1220.

[24]Plaintiff cites this statute in her June 18, 2009 reply to the answer. Doc. Ent. 10 at 2 ¶ 3.

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). This statute additionally discusses "[i]mpermissible consideration of race, color, religion, sex, or national origin in employment practices[.]" 42 U.S.C. §§ 2000e-2(m).

The Act also discusses "[o]ther unlawful employment practices[.]" 42 U.S.C. § 2000e-3.[25] Specifically, it concerns "[d]iscrimination for making charges, testifying, assisting, or participating in enforcement proceedings[,]" 42 U.S.C. § 2000e-3(a),[26] and "[p]rinting or publication of notices or advertisements indicating prohibited preference, limitation, specification, or discrimination; occupational qualification exception[,]" 42 U.S.C. § 2000e-3(b). "The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title." 42 U.S.C. § 2000e-5(a).[27]

Also, there is the **Americans with Disabilities Act** of 1990 (ADA) (42 U.S.C. §§ 12101-12213). In part, this Act provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

---

[25]Plaintiff cites this statute in her June 18, 2009 reply to the answer. Doc. Ent. 10 at 2 ¶ 3.

[26]"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). These are known as the "opposition clause" and the "participation clause". *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714 (6th Cir. 2008).

[27]Plaintiff cites this statute in her reply to the answer. Doc. Ent. 10 at 2 ¶ 3.

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[28]

Furthermore, there is the **Rehabilitation Act** of 1973 (29 U.S.C. §§ 701-796l).[29]  It provides, in part, that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

Also, there is the **Age Discrimination in Employment Act** of 1967 (ADEA) (29 U.S.C. §§ 621-634).  For example, Section 623 provides in part that, "It shall be unlawful for an employer–

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
> (3) to reduce the wage rate of any employee in order to comply with this chapter."

29 U.S.C. § 623(a) ("Employer practices").[30]

_____

[28]Plaintiff's complaint mentions disability (Doc. Ent. 1 at 7), and the ADA is mentioned in defendant University of Michigan's July 7, 2009 motion (Doc. Ent. 11 at 4).

[29]Defendant University of Michigan cites the Rehabilitation Act in its dispositive motion. Doc. Ent. 11 at 10.

[30]Plaintiff cited the ADEA in her July 10, 2008 charge of discrimination (Doc. Ent. 11-8 at 2), and defendant University of Michigan cites this Act in its dispositive motion (Doc. Ent. 11 at 4).

Plaintiff may prove her discrimination claims by direct, circumstantial or inferential, or statistical evidence. "It is the rare situation when direct evidence of discrimination is readily available, thus victims of employment discrimination are permitted to establish their cases through inferential and circumstantial proof." *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997). "[A] plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline*, 128 F.3d at 348. *See also Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008) ("A plaintiff in a Title VII or ADEA action may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation.") (citing *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir.2004)); *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 940 (6th Cir. 1987) ("A plaintiff may also show through circumstantial, statistical, or direct evidence that he has been discriminated against.") (citing *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983).[31]

**2.**     On the state level, Michigan has the Elliott-Larsen Civil Rights Act (ELCRA). *See* Mich. Comp. Laws §§ 37.2101-37.2103 ("General Provisions"), 37.2201-37.2211 ("Definitions"), 37.2301-37.2304 ("Public Accommodations and Services"), §§ 37.2401-37.2404a ("Educational Institutions"); §§ 37.2501-37.2507 ("Housing"); §§ 37.2601-37.2606 ("Civil Rights Commission

---

[31]Plaintiff's complaint contains legal research regarding direct evidence of individual disparate treatment. Doc. Ent. 1 at 34. She also mentions direct evidence of individual disparate treatment in her May 4, 2009 motion to continue and her September 9, 2009 filing. Doc. Ent. 8 at 2; Doc. Ent. 22 at 4.

and Civil Rights Department");[32] §§ 37.2701-37.2705 ("Violations, Penalties, and Remedies");

§§ 37.2801-37.2804 ("Remedies").

"A plaintiff may prove a violation of MELCRA under three different theories: disparate

treatment, intentional discrimination, or disparate impact." *Carrington v. Carpenters Local 118*,

No. 95-2407, 1997 WL 148799, 2 n.2 (6th Cir. Mar. 31, 1997) (citing *Singal v. General Motors*

*Corp.*, 179 Mich. App. 497, 447 N.W.2d 152, 155-56 (1989)).

**F.    The Court should grant in part and deny in part defendant University of Michigan's**
**dispositive motion.**

**1.    The individually named defendants are entitled to dismissal of the Title VII,**
**Rehabilitation Act, ADA, ADEA and/or Michigan ELCRA claims against them,**
**because they are not "employers."**

As plaintiff's complaint acknowledges, "the employer has a greater opportunity to guard

against misconduct by supervisors than by common workers; employers have greater opportunity

and incentive to screen them, train them, and monitor their performance." *Faragher v. City of*

*Boca Raton*, 524 U.S. 775, 803 (1998). Also, the Court held, "[a]n employer is subject to

vicarious liability to a victimized employee for an actionable hostile environment created by a

supervisor with immediate (or successively higher) authority over the employee. " *Faragher*,

524 U.S. at 807.

Defendants' second affirmative defense is that "[t]he individually named Defendants are

not Plaintiff's employer and as such are not proper Defendants to Plaintiff's claims under Title

VII, ADEA, or the ADA." Doc. Ent. 7 at 2 ¶ 2. In her reply to the answer, plaintiff states that

---

[32]Plaintiff's complaint mentions the Michigan Civil Rights Commission. Doc. Ent. 1 at
11. Also, in her reply to the answer, she claims defendants' actions "are against the Law in
Michigan." Doc. Ent. 10 at 3.

"[t]he individually named Defendants are [her] employer and as such are proper Defendants to [her] claims under Title VII, ADEA[.]" Doc. Ent. 10 at 2 ¶ 2.  Also, plaintiff appears to cite the case of *Brown v. Scott Paper Worldwide Co.*, 143 Wash.2d 349, 20 P.3d 921 (2001), wherein the court stated that Wash. Rev. Code § 49.60.040(3), which defines, "employer," "by its very terms, contemplates individual supervisor liability."  *Brown*, 143 Wash.2d at 358, 20 P.3d at 926.  Doc. Ent. 10 at 3.  Also, in her response to defendant's dispositive motion, plaintiff cites Blumoff & Lewis, *The Reagan Court and Title VII: A Common-Law Outlook on a Statutory Task*, 69 N.C. L. Rev. 1 (1990), in support of her statement that "[s]upervisors are liable[,]" Doc. Ent. 22 at 5.

However, the Court should agree with defendant University of Michigan that "[t]he individually named supervisors are not liable for plaintiff's statutory discrimination claims." Doc. Ent. 11 at 9-10.  Specifically, defendant University of Michigan contends that "[n]one of these individuals are individually liable for Plaintiff's claims of discrimination under the ADEA, ADA or Title VII."  Doc. Ent. 11 at 10.

In support of this argument, defendant University of Michigan relies upon *Wathen v. General Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997) ("Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII.") and *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) ("supervisors, sued in their individual capacities, are not included within the statutory definition of 'employer' under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination[,]" and "[a]n examination of Title VII's definition of employer, as well as circuit precedent, convey that Title VII expressly forecloses a right of action against supervisors, in their individual capacities, for retaliation under the Rehabilitation Act.").  *See also Mason v. Stallings*, 82 F.3d 1007 (11th Cir.

18

1996) (the ADA "does not provide for individual liability, only for employer liability."); *Smith v. Lomax*, 45 F.3d 402 (11th Cir. 1995) (board of commissioners members could not "be held liable under the ADEA or Title VII."); *United States Equal Employment Opportunity Commission v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995) ("individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA.") and *Mulbah v. Detroit Bd. of Educ.*, 97 Fed.Appx. 617, 619 (6th Cir. 2004) ("Mulbah could not sue the individual defendants under ELCRA because only the employer is subject to liability under that statute.").

Based on these cases, the individual defendants (Arrieta, Jester, Rutherford, Powers, Peterson, Coleman, Daughenbaugh, Jordan-Sedgeman, Childs, Denton & potentially Gould)[33] are entitled to dismissal of the Title VII, Rehabilitation Act, ADA, ADEA and/or Michigan ELCRA claims against them in their individual capacities, because they are not "employers."

**2.**      **The Eleventh Amendment bars ADEA, ADA and state-law claims against defendant University of Michigan in its official capacity, but it does not bar a Title VII action against it in its official capacity.**

Defendant University of Michigan argues that "[p]laintiff's claims of age discrimination, disability discrimination, and state law violation are barred by Eleventh Amendment sovereign immunity." Doc. Ent. 11 at 8-9.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

---

[33]Defense counsel has not entered an appearance on Gould's behalf; still, defendant University of Michigan mentions Gould as a listed defendant. Doc. Ent. 11 at 9-10.

U.S. Const. amend. XI. Although the Eleventh Amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion).

"There are . . . three qualified exceptions to Eleventh Amendment immunity[.]" *Lawson v. Shelby County*, TN, 211 F.3d 331, 334 (6th Cir. 2000). "First, a state may waive the protection of the Amendment by consenting to the suit." *Lawson*, 211 F.3d at 334.[34] "The second exception to the Eleventh Amendment bar is that Congress, under certain provisions of the Constitution, may abrogate the sovereign immunity of the states through statute." *Id*. "Under the third exception, a federal court may enjoin a 'state official' from violating federal law." *Id*. at 335 (citing *Ex parte Young*, 209 U.S. 123 (1908)).[35]

Defendants in the instant case are the University of Michigan and university officials and supervisors. Doc. Ent. 11 at 9-10. The Constitution of the State of Michigan provides that "[t]he legislature shall appropriate moneys to maintain the University of Michigan[.]" Mich. Const.

---

[34]"[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also, Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Alabama v. Pugh*, 438 U.S. 781 (1978) ("[S]uit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Michigan] has consented to the filing of such a suit.").

[35]This is a limited exception to the Eleventh Amendment bar for suits against state officers in their official capacities which seek only prospective relief. To come within this exception, the relief sought by the plaintiff must (1) remedy a continuing violation of federal law; and (2) properly be characterized as prospective. *See Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996).

Art. 8 § 4.  It further provides that "[t]he regents of the University of Michigan and their successors in office shall constitute a body corporate known as the Regents of the University of Michigan[.]" Mich. Const. Art. 8 § 5.  *See also Estate of Ritter by Ritter v. University of Michigan*, 851 F.2d 846, 848 (6th Cir. 1988) ("the Board of Regents unquestionably is a state agency to which the amendment applies and that it did not waive its eleventh amendment immunity by removing this cause to the district court and by its prior failure to raise the defense.").

Relying upon the Michigan Constitution, Article 8, Section 5, and *Ritter*, defendant University of Michigan contends that "the University of Michigan and its employees, in their official capacity, are an arm of the State of Michigan entitled to immunity under the Eleventh Amendment."  It is defendant University of Michigan's position that "Plaintiff's age discrimination and disability claims must be dismissed as to the University of Michigan and all University defendants in their official capacity."  Doc. Ent. 11 at 9.

Ordinarily, plaintiff's claims against defendant University of Michigan, an arm of the state, would be barred by the Eleventh Amendment.  *Alabama v. Pugh*, 438 U.S. 781 (1978) ("[S]uit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Michigan] has consented to the filing of such a suit."); *Jain v. University of Tenn. at Martin*, No. 87-6068, 1988 WL 30070, 1 (6th Cir. Apr. 6, 1988) (in discrimination suit, affirmed district court finding that "the defendant university was an arm of the State of Tennessee and that it was thus entitled to eleventh amendment sovereign immunity.").

So would be plaintiff's claims against the individual university defendants in their official capacities.  "[A] suit against a state official in his or her official capacity is not a suit

against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). *See also*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). "As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. Here, the individual defendants are state (university) officials, and plaintiff's claims against them for monetary damages, to the extent the claims are based upon defendants' official capacities, are barred.[36]

However, in an example of the aforementioned second exception to the Eleventh Amendment, the Sixth Circuit has stated that "the Eleventh Amendment does not preclude a federal court action against a state under Title VII[.]" *Freeman v. Michigan Dept. of State*, 808 F.2d 1174, 1177 (6th Cir. 1987) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).[37] *See also*

_____

[36]However, plaintiff may seek injunctive relief from a state official sued in his or her official capacity. *Will*, *supra*, 491 U.S. at 71 n. 10.

[37]The same is not true of plaintiff's ADEA and ADA claims. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 67 (2000) ("the ADEA does contain a clear statement of Congress' intent to abrogate the States' immunity, but that the abrogation exceeded Congress' authority under § 5 of the Fourteenth Amendment."); *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 360 (2001) (suits in which state employees seek to "recover money damages by reason of the State's failure to comply with the provisions of Title I of the Americans with Disabilities Act of 1990 (ADA or Act) . . . are barred by the Eleventh Amendment."); *Kovacevich v. Kent State University*, 224 F.3d 806, 816 (6th Cir. 2000) (*Kimel* "plainly holds that states cannot be sued for money damages under the ADEA[.]"); *Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Div.*, 276 F.3d 808, 812 (6th Cir. 2002) ("It is clear after *Garrett* that congressional authority under section 5 to enforce the Equal Protection Clause is limited and will not sustain the Disabilities Act as an exception to Eleventh Amendment state immunity.").
Nor is the same true of plaintiff's state law claims. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. . . . [T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Pennhurst State School & Hosp.*, 465 U.S. at 121 (internal citation omitted). *See also U.S. Pipe & Foundry Co. v. Johnson*, 927 F.2d 296, 298-299 (6th Cir. 1991) ("The Supreme Court has held that the eleventh amendment prohibits federal

*Cox v. Shelby State Community College*, 48 Fed.Appx. 500, 504-505 (6th Cir. 2002) (with respect to Eleventh Amendment immunity, where plaintiff sued president of state community college "in both his individual and official capacities . . . [president] may be held liable for tortious acts committed in his individual capacity:  there, he only benefits from qualified immunity[,]" "[i]nsofar as [plaintiff's] suit asserts claims for damages against [president] in his individual capacity and for his personal torts, it is not barred by the Eleventh Amendment[,]" "Congress acted validly under its Fourteenth Amendment Enforcement Clause powers to abrogate state sovereign immunity to Title VII claims[,]" and "the Eleventh Amendment simply does not apply to Title VII claims[.]").

In sum, the Eleventh Amendment does not bar a Title VII action against defendant University of Michigan.  In the context of a Title VII claim, "the institutional defendants and [the individual] in his official capacity are not protected by sovereign immunity, because that immunity has been abrogated by Congress."  *Cox*, 48 Fed.Appx. at 505 (citing *Fitzpatrick*, 427 U.S. at 456).

**3.**  **Plaintiff has exhausted her Title VII race, sex and retaliation claims against defendant University of Michigan, and the Court need not address whether plaintiff has complied with the exhaustion requirement(s) as to non-Title VII claims against any of the defendants.**

"Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination."  *Fantini v. Salem State College*, 557 F.3d 22, 26 (1st Cir. 2009) (referencing 42 U.S.C. § 2000e-5(f)).  Defendant's third affirmative defense is that "[p]laintiff has failed to exhaust her administrative remedies under the ADA as

courts from ordering state officials to conform their conduct to state law.") (citing *Pennhurst*).

she has failed file a charge of disability discrimination with the EEOC." Doc. Ent. 7 at 2 ¶ 3. Plaintiff answers that she "has filed separate charges of disability discrimination with [the] Department of Labor." Doc. Ent. 10 at 2 ¶ 3.

In the instant motion, defendant University of Michigan argues that "[p]laintiff has failed to exhaust her administrative remedies as to claims under the ADA and as to all federal civil rights claims against the individually named defendants." Doc. Ent. 11 at 10-11. Plaintiff's July 10, 2008 EEOC charge of discrimination against the University of Michigan Hospital is based upon race, sex, retaliation and age. Doc. Ent. 11-8 at 2. As defendant University of Michigan points out, plaintiff did not "allege a disability claim under the ADA[,]" and "did not file her EEOC charge against any of the named Defendants in the instant complaint." Doc. Ent. 11 at 10.

The Sixth Circuit has stated that "it is the scope of the EEO complaint, and those claims which are reasonably expected to grow therefrom, which determine federal court jurisdiction[.]" *Haithcock v. Frank*, 958 F.2d 671, 676 (6th Cir. 1992) (citing *Equal Employment Opportunity Commission v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980)).[38] More recently, the Sixth Circuit has stated,

> "Federal courts do not have subject matter jurisdiction of Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." The regulatory requirement that a claimant's written charge be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of" has two purposes. First, the requirement provides the basis for the EEOC's "attempt to obtain voluntary compliance with the law." Second, these attempts "notify potential defendants of the nature of plaintiff's claims and provide them the

---

[38]As plaintiff's legal research acknowledges (Doc. Ent. 1 at 28), "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

opportunity to settle the claims before the EEOC rather than litigate them."

*Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir. 2000) (internal citations to

*Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) omitted). Also, under

the ADA,

> . . . a claimant who wishes to bring a lawsuit claiming a violation of the ADA
> must file a charge of discrimination with the EEOC within 300 days of the alleged
> discrimination. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1); *Jones v.
> Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir.2000). An employee may
> not file a suit under the ADA if he or she does not possess a right-to-sue letter
> from the EEOC because he or she has not exhausted his or her remedies. *See* 42
> U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a) (procedures from § 2000e-5 apply
> to ADA claims); *see also [Equal Employment Opportunity Commission] v.
> Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir.1999). However, the
> failure to obtain a right-to-sue letter is not a jurisdictional defect; rather the
> right-to-sue letter is a condition precedent. *See Rivers v. Barberton Bd. of Educ.*,
> 143 F.3d 1029, 1032 (6th Cir.1998). Accordingly, the requirement of obtaining a
> right-to-sue letter may be waived by the parties or the court. *See id.* at 1031.

*Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000).

"[A] party must be named in the EEOC charge before that party may be sued under Title

VII 'unless there is a clear identity of interest between [the unnamed party] and a party named in

the EEOC charge[.]'" *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987)(quoting *Jones v.

Truck Drivers Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984)).[39] *See also Dennis v.*

---

[39]"The failure to name a Title VII defendant as a respondent in the EEOC charge will be
excused if an 'identity of interest' is found to exist between the named and unnamed parties.
The 'identity of interest' exception acknowledges the reality that laymen, unassisted by trained
lawyers, initiate the process of filing a charge with the EEOC, and accordingly prevents
frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the
charge." *Romain*, 836 F.2d at 245. "Courts generally find an identity of interest where the
unnamed party has been provided with adequate notice of the charge under circumstances which
afford him an opportunity to participate in conciliation proceedings aimed at voluntary
compliance." *Id.* (citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,
U.A.*, 657 F.2d 890, 905 (7th Cir. 1981)).

*Burlington Northern R.R.*, No. 93-5200, 1993 WL 243736, 1 (6th Cir. July 6, 1993) ("because

[plaintiff] did not file charges with the EEOC against any of the individual defendants except

Burlington, they are not proper parties to his employment discrimination case and no exceptions

apply.") (citing 42 U.S.C. § 2000e-5(e); *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir.1987) (per

curiam)); *Johnson v. State of Md.*, 940 F.Supp. 873, 875 (D.Md. 1996) ("As a general rule, a

civil action for employment discrimination may only be brought against the party named in the

original administrative charges filed with the EEOC.").

Plaintiff has exhausted her discrimination claims against defendant University of

Michigan to the extent they are based upon race, sex, retaliation and age. The EEOC "Charge of

Discrimination" form which plaintiff completed on July 10, 2008, provided specific spaces for

plaintiff to allege discrimination on the bases of race, color, sex, religion, national origin,

retaliation, age and disability; however, plaintiff only marked the boxes for race, sex, retaliation

and age. Doc. Ent. 11-8 at 2.

Plaintiff has exhausted her Title VII race, sex and retaliation discrimination claims

against defendant University of Michigan. "Title VII makes it 'an unlawful employment

practice for an employer ... to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin.'" *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 390 (6th

Cir. 2009) (quoting 42 U.S.C. § 2000e-2(a)(1)). An employee can also bring a Title VII action

based upon retaliation. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003).[40]

_____

[40]In a form attached to plaintiff's complaint, she mentions discrimination on the bases of
race, sex, age, color, religion and retaliation. Doc. Ent. 1 at 14-15. To the extent plaintiff
intends to bring her Title VII claims based upon color, religion and/or national origin - in other

However, even though plaintiff's age discrimination claim against defendant University

of Michigan was exhausted, it is of no significance here. If the Court agrees with my foregoing

conclusions that only plaintiff's Title VII claims against defendant University of Michigan

survive this motion, it need not address whether plaintiff's age and/or disability claims have been

exhausted. "The ADEA . . . provides the exclusive remedy for federal-employment

age-discrimination claims." *Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009)

(citing *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir.2006)). Also, the Rehabilitation Act

"provides the exclusive remedy for federal employees alleging disability discrimination[.]"

*Willard v. Potter*, 264 Fed.Appx. 485, 487 (6th Cir. 2008). This conclusion is unchanged by

plaintiff's assertion that she "has filed a separate case based on disability and retaliation[,]"[41] and

"has filed separate charges of disability discrimination with [the] Department of Labor." Doc.

Ent. 10 at 2 ¶¶ 6, 3. Likewise, the Court need not address defendant University of Michigan's

argument that "[p]laintiff's failure to exhaust her administrative remedies as to the ADA claim

and as to the individually named Defendants, prohibits this Court from exercising subject matter

jurisdiction in this matter." Doc. Ent. 11 at 11.[42]

**4.      Plaintiff should be allowed to file an amended complaint with respect to her Title**

words, on a Title VII basis other than those already exhausted (race, sex and retaliation) -
plaintiff should be permitted to amend her complaint to show compliance with the exhaustion
requirement. *See*, *i.e.*, 42 U.S.C. §§ 2000e-5, 12117(a).

[41]A docket query of the cases in the Eastern District of Michigan reveals that plaintiff
Henrietta D. Platt filed *Platt v. Sunrise Assisted Living of Ann Arbor, et al.*, Case No. 2:99-cv-
74835-PJD, on October 1, 1999. Other than the instant case, there is not a more recent case in
this Court in which Henrietta Platt is a party.

[42]In her response to defendant's dispositive motion, plaintiff states she has received a
right to sue letter from the EEOC. Doc. Ent. 22 at 3. It does not appear that a right to sue letter
is part of the record in this case.

**VII hostile work environment claim against defendant University of Michigan.**

In her complaint, plaintiff contends that "[t]he University knowing[ly] let the supervisor [harass] [her] in his engaging behavior[.]" She claims that "[t]he University did not take actions to stop [the] offending behavior in a[n] effort to promote a respectful environment and avoid the possibility that [a] hostile [environment] would develop out of control[.]" Doc. Ent. 1 at 2-3.

In her May 4, 2009 "motion to continue," plaintiff claims that her Title VII claim is based upon race, sex, color, religion or national origin. She specifically states that she claims a violation of Title VII "because [she is] a Black Female." She also states that the harassment she suffered "created an intimidating, hostile or offensive work environment by unreasonably interfering with [her] work performance, creating an abusive work environment, or both, and suffered harassment by the kind of personnel and in circumstances that should fasten liability on the employer under general principles of agency law." Doc. Ent. 8 at 1-2. In her June 18, 2009 reply to the answer, plaintiff claims she was subjected to discrimination on the bases of age, color and retaliation. Doc. Ent. 10 at 1 ¶ 1.

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). *See also* Doc. Ent. 1 at 29, 31 (plaintiff's legal research citing *Meritor Sav. Bank* and *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).[43] As plaintiff points out,

---

[43]In *Harris*, the Supreme Court considered "the definition of a discriminatorily 'abusive work environment' (also known as a 'hostile work environment') under Title VII[.]" *Harris*, 510 U.S. at 19. In her concurring opinion in *Harris*, Justice Ginsburg stated, "Title VII declares discriminatory practices based on race, gender, religion, or national origin equally unlawful." *Harris*, 510 U.S. at 17, 26 (Ginsburg, J. concurring). Relying in part on this quote, the EEOC "believes that *Harris* also applies to cases involving hostile environment harassment on the basis of age or disability. Accordingly, investigators should consider *Harris* applicable regardless of

Doc. Ent. 8 at 3, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB*, 477 U.S. at 67 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). "[S]exual harassment by supervisory personnel is automatically imputed to the employer when the harassment results in tangible job detriment to the subordinate employee." *Id.* at 76. Plaintiff claims that her "work environment was made abusive," and the tangible detriments to her job were the denial of a promotion, diminished compensation and termination. Doc. Ent. 8 at 3.

Defendant University of Michigan argues that plaintiff has not pleaded a claim for hostile work environment. Doc. Ent. 11 at 12-13. "A prima facie claim of a hostile work environment requires [plaintiff] to show (1) [s]he was a member of a protected class; (2) [s]he was subjected to unwelcome racial, religious, or sexual harassment; (3) the harassment was based on [her] race, sex, or religion; (4) the harassment had the effect of unreasonably interfering with [her] work performance by creating an intimidating, hostile, or offensive work environment; and (5) [defendant] is liable for the creation of that environment." *Kelly v. Senior Centers, Inc.*, 169 Fed.Appx. 423, 428 (6th Cir. 2006). These elements also apply to a hostile work environment claim based upon national origin. *Ejikeme v. Violet*, 307 Fed.Appx. 944, 949 (6th Cir. 2009).[44]

---

the antidiscrimination statute on which the charge is premised." U.S. E.E.O.C. Enforcement Guidance on *Harris v. Forklift Sys., Inc.*, Mar. 8, 1994.

[44]"Under Title VII, a plaintiff establishes a prima facie case of a hostile work environment based on race, religion, or national origin by demonstrating that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race, religion, or national origin; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Ejikeme*, 307 Fed.Appx. at 949 (citing *Hafford v. Seidner*, 183 F.3d

Based on plaintiff's representation that her race is "Black," Doc. Ent. 11-8 at 2, this report assumes any claim of discrimination on the basis of color is synonymous with her claim of race discrimination.[45]

With respect to the third element, defendant University of Michigan contends that "Plaintiff's complaint does not allege any allegations to support that any of the alleged harassment was based upon her race." In support of this statement, defendant University of Michigan contends that "[p]laintiff does not point to any racially derogatory comments nor does she present any allegations which would support that any alleged harassment was directed at her on the basis of her race[,]" and "the neutral arbitrator found that Plaintiff's discharge was the result of Plaintiff's insubordination and issued with good cause." Doc. Ent. 11 at 12.[46]

With respect to the fourth element, defendant University of Michigan contends that "Plaintiff . . . does not plead sufficient facts to support a claim that the alleged harassment was intimidating, hostile, or offensive." Referencing *Clay v. United Parcel Service, Inc.*, 501 F.3d 695 (6th Cir. 2007),[47] defendant University of Michigan states that "Plaintiff's complaint merely

---

506, 512 (6th Cir.1999)).

[45]"Color may be a rare claim, because color is usually mixed with or subordinated to claims of race discrimination[.]'" *Falero Santiago v. Stryker Corp.*, 10 F.Supp.2d 93, 96 (D. Puerto Rico 1998) (quoting *Felix v. Marques*, 24 EPD ¶ 31,279 (D.D.C.1980)).

[46]For example, Chiesa's opinion provides that "the Employer has met its burden of establishing that the grievant continually argued with her supervisor and refused to perform the work as she was directed[;]" "the grievant engaged in what could fairly be described as an argumentative, combative, increasing in intensity exchange with Arrieta[;]" and "the Employer has established just cause to terminate the grievant's employment." Doc. Ent. 11-6 at 14, 15, 16-17.

[47]Analysis of the fourth prong "requires the court to examine, under the totality of the circumstances, the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

consists of allegations that her supervisor criticized her work performance and gave her assignments that she considered inappropriate."  Doc. Ent. 11 at 12.

Plaintiff responds, stating that the University of Michigan "allow[ed] [her] civil rights to be violated, they allowed me to be subjected to [their] daily, created hostile work environment . . . [w]here [she was] very abuse[d] by [her] employer."  Doc. Ent. 22 at 4.

At least one court has stated that, "[u]ltimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and 'we have repeatedly cautioned against setting the bar too high' in this context."  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citing *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.2003) (emphasis omitted)).

There are several examples of courts evaluating the sufficiency of a hostile work environment claim on a motion to dismiss.  *See, i.e., Patane*, 508 F.3d at 114 ("a plaintiff need only allege that she suffered a hostile work environment because of her gender, not that all of the offensive conduct was specifically aimed at her."); *Corrales v. Chase Bankcard Service, Inc.*, 128 Fed.Appx. 598, 599 (9th Cir. 2005) (pro se appellant) ("[c]onsidering all the circumstances alleged in the complaint, we cannot say that a reasonable woman in Corrales' position would not consider the terms and conditions of her employment altered by the actions of the diversity officer and the supervisors.") (referencing *Harris*, 510 U.S. at 23); *Weston v. Pennsylvania*, 251 F.3d 420, 425-430, 430 (3d Cir. 2001) (regarding a motion to dismiss hostile work environment

---

interfere[d] with an employee's performance."  Clay, 501 F.3d at 707 (quotations and citations omitted).  Also, "'mere offensive utterances,' . . . are not actionable under Title VII." *Id*. at 708.

claims, "this is an appeal from a 12(b)(6) dismissal and, although we consider the question to be an extremely close one, we conclude that Weston's allegations of a hostile work environment created by the remarks of co-workers and managers suffices to state a Title VII claim."); *Raum v. Laidlaw Ltd.*, No. 98-9091, 1999 WL 248157, 2 (2d Cir. Apr. 23, 1999) (pro se appellant) ("the alleged conduct was neither tinged with offensive sexual connotations nor did it suggest that Raum was being targeted based on his gender. Johnston's alleged remarks do not suggest sex discrimination, but are "mere utterance[s]" engendering offensive feelings in Raum. Moreover, Raum failed to allege facts suggesting that his workplace was "permeated with discriminatory intimidation" or that the conditions of his employment were adversely affected. In sum, while Johnston's alleged remarks may have been crass and offensive, they were not predicated on Raum's gender and therefore not actionable under Title VII.") (internal citations omitted).

However, for the reasons stated in Section II.G of this report, plaintiff should be allowed to file an amended complaint with respect to her Title VII hostile work environment claim against defendant University of Michigan.

**5.     Plaintiff should be allowed to file an amended complaint with respect to her Title VII retaliation claim against defendant University of Michigan.**

Plaintiff's legal research contains information on retaliation from the U.S. Equal Employment Opportunity Commission which mentions "adverse action," "covered individual," and "protected activity." Doc. Ent. 1 at 26. Her legal research also refers to the "participation" clause of Title VII Section 704 (42 U.S.C. § 2000e-3). Doc. Ent. 1 at 33. Also, her June 18, 2009 reply to the answer alleges that she was "disciplined because she contacted the chain of command to inform them of the harassment, discrimination of her age, color, and retaliation and . . . [she] was being harassed by her supervisor an[d] being threaten[ed] he was going to fire her

if she would not stop filing grievances[.]" Doc. Ent. 10 at 1 ¶ 4. Plaintiff also claims her complaints were not investigated. Doc. Ent. 10 at 2 ¶ 5. She further claims she "was discharged for claiming her Civil Rights [under Title] VII[.]" Doc. Ent. 10 at 2 ¶ 5.

Defendant University of Michigan argues that "[p]laintiff fails to present a prima facie claim of retaliation in that she cannot demonstrate she engaged in protected activities under the Act." Doc. Ent. 11 at 13-15. "In order to make out a prima facie case of retaliation, [plaintiff] must demonstrate: (1) that she engaged in activity protected by Title VII; (2) that the defendant knew of this exercise of her protected rights; (3) that the defendant consequently took an employment action adverse to plaintiff, and (4) that there is a causal connection between the protected activity and the adverse employment action." *Strouss v. Michigan Dept. of Corrections*, 250 F.3d 336, 342 (6ᵗʰ Cir. 2001).

Defendant claims that plaintiff "cannot demonstrate that [s]he was engaged in protected activity or that there was a causal connection between the protected activity and the adverse employment action." Doc. Ent. 11 at 13. Citing 42 U.S.C. § 2000e-3(a), defendant University of Michigan asserts that under the opposition clause, a vague discrimination charge is insufficient. Doc. Ent. 11 at 13; *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6ᵗʰ Cir. 1989) ("Assuming that Booker intended discrimination, we hold that a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination."); *Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591 (6ᵗʰ Cir. 2007) ("Fox's statements to Poplin are not protected because they did not amount to opposition to an unlawful employment practice by Eagle. In order to receive

protection under the ADEA, a plaintiff's expression of opposition must concern a violation of the ADEA.") (citing *Booker*, 879 F.2d at 1313).

Defendant contends that plaintiff's twelve (12) grievances (Doc. Ent. 11-9) allege "in generic terms, that Plaintiff was treated differently than other staff members or that Plaintiff was subjected to disparate treatment and harassment." Defendant further contends that plaintiff's grievances do not allege "that she was subjected to any type of race or sex discrimination in violation of Title VII[,]" and allege "a violation of the collective bargaining agreement between the University and Plaintiff's union; they did not allege any violation of the civil rights laws." Doc. Ent. 11 at 14. It is defendant University of Michigan's position that "Plaintiff's vague references to disparate treatment and harassment in several of her contract grievances to not constitute allegations of violation of any civil rights statute." Doc. Ent. 11 at 15.

In response, plaintiff claims that she "follow[ed] the open door policy, [and] The University of Michigan Health [System] showed retaliation because [she] claimed [her] Civil Rights [under Title] VII[.] [T]hey allow[ed] [their] employees . . . to violate [her] civil rights." Doc. Ent. 22 at 4.

To begin, "an employment discrimination plaintiff need not plead a prima facie case of discrimination[.]" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002). Instead, the issue is whether "petitioner's complaint is sufficient to survive respondent's motion to dismiss." *Swierkiewicz*, 534 U.S. at 515.

It is clear that the alleged protected conduct is the filing of grievances.[48] For example,

_____

[48]*Stucky v. Department of Educ.*, 283 Fed.Appx. 503, 505 (9th Cir. 2008) ("The union grievances Stucky filed after 2000 do not qualify as protected activities because the record does not establish that they were lodged in opposition to Title VII violations."); *Johnson v. Sullivan*,

plaintiff states in her complaint that "when I file[d] grievances about the abuse they create[d] the los[s] of my job[,]" "retaliation when filed grievances," "when I spoke up for my rights they show retaliation[,]" "[f]ired because of retaliation because I kept filing grievances on . . . Arrietta[,]" etc. Doc. Ent. 1 at 2, 7-11. As to adverse actions and causal connection, the time line set forth in Section II.A of this report shows that plaintiff filed grievances before her October 22, 2007 written warning, January 2, 2008 two day disciplinary layoff, February 28, 2008 suspension and March 14, 2008 notice of discharge.

However, consistent with Section II.G of this report, plaintiff should be allowed to file a more definite statement in the form of an amended complaint with respect to her Title VII retaliation claim against defendant University of Michigan. *Equal Employment Opportunity Commission v. Ohio Edison Co.*, 7 F.3d 541, 546-547 (6th Cir. 1993) ("the motions before the court indicated the allegation of a causal connection between the protected activity of a co-employee and the retaliation against Whitfield, the charging party. However, defendant was correct in requesting a more definite statement in the complaint itself. The complaint should have indicated that Whitfield came within the coverage of the statute because he engaged in protected activity under Title VII by having a representative oppose his discriminatory discharge on his behalf, and that he was then retaliated against by having an offer of reinstatement withdrawn.").

**G.     The Court should allow plaintiff to file a more definite statement pursuant to Fed. R. Civ. P. 12(e) in the form of a first amended complaint.**

_____

945 F.2d 976, 982 (7th Cir. 1991) (as to retaliation for EEO complaint, "[i]f the filing of the EEO complaint or grievances triggered the discharge, Johnson offers no reasons for the supervisors' extended delay in taking action. . . . Although he filed several union grievances, Johnson has not shown a causal connection between these and his discharge.") (internal citation omitted).

Fed. R. Civ. P. 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

Plaintiff's March 9, 2009 complaint does not comply with several Federal Rules of Civil Procedure. The Court should order plaintiff to file a first amended complaint, within a specified time period, which will supercede[49] the original complaint and which must comply with the requirements set forth below. In so doing, the order should also encourage plaintiff to take into consideration the conclusions reached in Section II.F of this report.

### 1.     Parties to the action

As previously mentioned, the docket in this case lists twelve (12) defendants: the University of Michigan, Arrieta, Jester, Rutherford, Powers, Peterson, Coleman, Daughenbaugh, Jordan-Sedgeman, Childs, Denton and Gould. However, the front page of the complaint lists

---

[49]"Under the Federal Rules, an amended complaint supercedes the original complaint." *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) (citing cases); *Klyce v. Ramirez*, No. 87-5176, 1988 WL 74155, *3 (6th Cir. July 19, 1988) (quoting *Fritz*, 676 F.2d at 1358); 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1476 (2d ed. 1987) ("Effect of an Amended Pleading") ("A pleading that has been amended under Rule 15(a) supercedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."). Likewise, the Local Rules of this Court provide that "[a] party who moves to amend a pleading shall attach the proposed amended pleading to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference. Failure to comply with this Rule is not grounds for denial of the motion." E. D. Mich. LR 15.1.

only eleven (11) defendants - omitting Gould.  Doc. Ent. 1 at 1.  It is not clear if Gould is an intended defendant.  She is listed on a page which purports to list University of Michigan staff, but so are others who are not listed as defendants.  Doc. Ent. 1 at 4.

Keeping in mind the conclusions reached in Section II.F.1 and Section II.F.2 of this report, plaintiff's amended complaint should clearly list the intended defendant(s) and the capacity (individual or official) in which the defendant(s) is(are) sued.

**2.      Subject matter jurisdiction and Fed. R. Civ. P. 8(a)(1)**

E.D. Mich. LR 41.2 provides that "[s]ubject to Fed. R. Civ. P. 23(e) and LR 81.1, when it appears that the court lacks subject matter jurisdiction or that the parties have taken no action for a reasonable time, the court may, on its own motion after reasonable notice or on application of a party, enter an order dismissing or remanding the case unless good cause is shown.  An application for a continuance or pending discovery may not preclude a dismissal for failure to prosecute."

The Civil Cover Sheet indicates that jurisdiction is based upon federal question and classifies the nature of suit as "civil rights."  Doc. Ent. 1-4 at 27.  Still, the complaint itself does not contain a "short and plain statement of the grounds for the court's jurisdiction[.]" Fed. R. Civ. P. 8(a)(1).  The complaint should state the jurisdictional basis or bases, such as 28 U.S.C. § 1331 ("Federal question") and 28 U.S.C. § 1367 ("Supplemental jurisdiction").

**3.      Claims for relief and Fed. R. Civ. P. 8(a)(2)**

"A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  *See also Hamil v. Vertrees*, No. CIV. A. 98-D-508-N, 2001 WL 135716, 8 (M.D. Ala. Jan. 10, 2001) (with

respect to failure to state a claim and to Fourteenth Amendment substantive due process count, "[a]ll Plaintiff must do at this stage, at least as to Plaintiff's claim against the individual Defendants in their official capacities, is set forth a "short and plain" statement, FED. R. CIV. P. 8(a)(1), of her claim for relief.").

As previously mentioned, plaintiff's complaint mentions Title VII of the Civil Rights Act of 1964. *See also* 42 U.S.C. §§ 3601-3619, 3631 ("Civil Rights Act of 1968"); 2 U.S.C. §§ 601, 1201-1202, 1219-1220 ("Civil Rights Act of 1991") (mentioned in plaintiff's legal research (Doc. Ent. 1 at 30)); Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. §§ 621-634) (mentioned in plaintiff's July 10, 2008 Charge of Discrimination (Doc. Ent. 11-8 at 2)).

Also, plaintiff's complaint alleges that there were "no reasonable accommodations for disability[.]" Doc. Ent. 1 at 7. *See*, *i.e.*, Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. §§ 12101-12213), Rehabilitation Act of 1973 (29 U.S.C. §§ 701-796l) (each of which are mentioned in defendant University of Michigan's dispositive motion (Doc. Ent. 11 at 8-11)).

Furthermore, plaintiff's complaint contains pages mentioning the "elements of her claims." Doc. Ent. 1 at 5-8. Additionally, plaintiff's complaint contains references to Michigan discrimination law (Doc. Ent. 1 at 9, 11). Perhaps plaintiff is referring to the ELCRA.

I note that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e) ("Construing Pleadings."). *Cooper v. Brookshire*, 70 F.3d 377, 380 (5th Cir. 1995) (on appeal from district court's sua sponte dismissal without service of process, "technical forms of pleadings are no longer required[.]") (citing former Fed. R. Civ. P. 8(e)(1)); *Bayron v. Trudeau*, 702 F.2d 43, 45 (2d Cir. 1983) ("The magistrate and the district judge gave much too technical a reading to a pro se prisoner's complaint, particularly when the "nonoperative" allegations do

make out a claim under § 1983."). *See also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) ("an employment discrimination plaintiff need not plead a prima facie case of discrimination and that petitioner's complaint is sufficient to survive respondent's motion to dismiss.").

With this in mind, it appears that plaintiff intends to assert causes of action based not only upon federal discrimination statutes but also upon State of Michigan discrimination statutes. It also appears that plaintiff's allegations are based upon intentional discrimination or disparate treatment, as opposed to disparate impact. *See Larkin v. State of Mich. Dept. of Social Services*, 89 F.3d 285, 290 (6th Cir. 1996) ("Accordingly, this is a case of intentional discrimination or disparate treatment, rather than disparate impact."); *Equal Employment Opportunity Commission v. Atlas Paper Box Co.*, 868 F.2d 1487, 1488 (6th Cir. 1989) ("Plaintiff EEOC's claim in this Title VII case was based on both disparate treatment and disparate impact, the former requiring an intentional racial discrimination finding.") (internal footnote omitted).[50]

Furthermore, plaintiff's legal research (Doc. Ent. 1 at 30) and her May 4, 2009 motion to continue (Doc. Ent. 8 at 1, 4) mention "quid pro quo," and her complaint contains several references to "hostile work environment[,]" (Doc. Ent. 1 at 1-12).[51]  In her complaint and in her

---

[50]*See also* Doc. Ent. 10 at 2 ¶ 3 (wherein plaintiff distinguishes between unlawful intentional discrimination and disparate impact).

[51]"Cases based on threats which are carried out are referred to often as quid pro quo cases, as distinct from bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment. The terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility."  *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751 (1998).  *See also Bonenberger v. Plymouth Tp.*, 132 F.3d 20, 28 (3d Cir. 1997) ("the elements present in one case sometimes may give rise to both types of claims[.]").

June 18, 2009 reply to the answer, plaintiff describes her hostile work environment.  Doc. Ent. 1 at 2; Doc. Ent. 10 at 1 ¶¶ 2, 3.

Still, plaintiff is the master of her complaint.  *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940 (6th Cir. 1994) ("The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action.") (citing cases); *Medlen v. Estate of Meyers*, 273 Fed.Appx. 464, 466 (6th Cir. 2008) ("because a plaintiff is the master of his complaint, he can generally choose to avoid federal jurisdiction by asserting only state law claims.") (citing cases); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) ("The plaintiff remains the master of its complaint, and when it says that it is not bringing a predatory-pricing claim, we should take it at its word.").

While at this point I draw no conclusion about plaintiff's compliance with Fed. R. Civ. P. 8(a)(2), plaintiff should be ordered to clarify her cause(s) of action in the event the Court allows her to submit a more definite statement or an amended complaint.  Here, again, plaintiff should be mindful of the conclusions reached in Section II.F.1 and Section II.F.2 of this report.

If the Court allows plaintiff to file a more definite statement or a first amended complaint, it should caution plaintiff that if she intends to bring causes of action based upon any of the aforementioned federal or state laws, or any other statutes, the bases of her claims should be made clear.  Furthermore, the bases for the alleged discrimination (race, color, sex, religion, national origin, retaliation, age, disability, etc.) should be stated clearly.  *See McAlees v. U.S. Government*, No. 96-8171, 1996 WL 756522, 2 (S.D.Fla. Oct. 8, 1996) ("The suit against Billings [IRS employee] in his official capacity must be dismissed pursuant to Fed. R. Civ. P.

8(a)(2), which requires that a complaint be dismissed when it is clear from the face of the complaint that plaintiff could not prove any set of facts which would entitle him to relief.") (citing *Madison v. United States*, 752 F.2d 607, 609 (11th Cir. 1985)).

Furthermore, even though a technical form is not required, plaintiff should be cautioned that any amended complaint may be subjected to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## 4.      A demand for relief and Fed. R. Civ. P. 8(a)(3)

Plaintiff's complaint contains a demand for jury trial.  Doc. Ent. 1 at 3.  Her May 4, 2009 "motion to continue" mentions that she was denied promotion, incurred diminished compensation and was terminated, and although the filing seeks $50,000,000 for plaintiff's "pain and suffering for [her] los[s] of life, to help [her][,]" Doc. Ent. 8 at 3, 4.  Also, her June 18, 2009 reply to the answer cites 42 U.S.C. § 1981a(a)(1), which concerns the right of recovery in a civil rights case of intentional employment discrimination,[52] and mentions injury.  Doc. Ent. 10 at 2 ¶ 3, 3.

However, plaintiff must set forth a demand for relief in the complaint itself.  *See* Fed. R.

---

[52]"In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent."  42 U.S.C. § 1981a(a)(1).

Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain: . . . (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."); *Smith v. Nationwide Property and Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) ("In determining the amount in controversy, the plaintiff is the 'master of his complaint'[.]").

For example, 42 U.S.C. § 1981a governs "[d]amages in cases of intentional discrimination in employment".[53] Subsection (a) sets forth three rights of recovery: (1) civil rights, (2) disability and (3) reasonable accommodation and good faith effort. Subsection (b) provides for compensatory and punitive damages. Subsection (c) provides for a jury trial.

## 5. The form of an amended complaint and Fed. R. Civ. P. 10(b)

Plaintiff's complaint does not comply with Fed. R. Civ. P. 10(b). Rule 10(b) provides in part that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Yet, the first twelve (12) pages of plaintiff's March 9, 2009 filing are a mixture of handwritten and typed text - none of which contain numbered paragraphs. For example, plaintiff's apparent attempt at setting forth the elements of her claims consists of text formatted in two, unnumbered, two-page long paragraphs. Doc. Ent. 1 at 5-6, 7-8. Also, four (4) of these pages are comprised of letters to the Judge (Doc. Ent. 1 at 9-12).

Defendants have answered the complaint with six (6) numbered paragraphs (Doc. Ent. 7 at 1-2) and have provided affirmative defenses in six (6) numbered paragraphs (Doc. Ent. 7 at 2-3). Still, they should be able to comply with Fed. R. Civ. P. 8(b)(1) ("Defenses; Admissions and

---

[53]This statute is referenced in plaintiff's legal research (Doc. Ent. 1 at 30), as well as in her May 4, 2009 filing (Doc. Ent. 8 at 3) and her June 18, 2009 filing (Doc. Ent. 10 at 2).

Denials.") ("In responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party. "). *See, i.e., Baer v. Johnson*, No. 08-0549, 2008 WL 839808, 1 (D.D.C. Mar. 31, 2008) ("Among its deficiencies, the complaint neither sets forth any specific claims by separate count nor contains enumerated allegations from which a claim may possibly be deciphered. It is simply unreasonable to expect defendant to craft an adequate response to the current complaint. The Court therefore will dismiss the complaint without prejudice to plaintiff's re-submission of a complaint-presumably a much shorter one-that conforms to the pleading standards of Rule 8.") (internal citations omitted).

It is true that "the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, on review of an order granting summary judgment, the Sixth Circuit has stated that "[i]n conducting our review, we need not scour the record or make a case for a party who has failed to do so on his own behalf, but even so, we are still obliged to protect a viable cause of action that a plaintiff has in fact raised." *Shorts v. Bartholomew*, 255 Fed.Appx. 46, 50-51 (6th Cir. 2007) ((referencing *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404-07 (6th Cir.1992)). *See also Brown v. Harris*, No. 95-cv-02203, 2009 WL 77464, 2 (D. Colo. Jan. 12, 2009) (Brimmer, J., accepting recommendation of Boland, M.J. that motion for summary judgment should be granted) (where plaintiff did not file a response, "[i]t is not a judicial function to scour the Complaint for statements that are based on personal knowledge and which might rebut the defendants' statement of undisputed facts.") (referencing *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir.1995)).

**H.     Conclusion**

At this time, the Court should not dismiss plaintiff's complaint under Fed. R. Civ. 12 and/or grant summary judgment under Fed. R. Civ. P. 56, except to the extent indicated in Section II.F of this report.  With regard to the balance of plaintiff's complaint and those claims not foreclosed by my recommendation, the Court should require plaintiff to file a more definite statement in the form of an amended complaint.  In so doing, the Court should require that any responding submission take note of the discussion set forth in Sections II.F & II.G of this report.  Furthermore, the Court should warn plaintiff that a failure to comply with these directives may result in the dismissal of her case.[54]

**III.     NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir.

---

[54]Incidentally, the Court's website, www.mied.uscourts.gov, contains information for parties without counsel, including a link to a PDF document, "Filing Your Lawsuit In Federal Court."

44

1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall not be more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.

3/3/10                                                    s/Paul J. Komives_____
DATE                                                   PAUL J. KOMIVES
                                                           UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on March 3, 2010.

s/Eddrey Butts_____
Case Manager